SAME CASE.—ON A RE-HEARING.

Offers to perform one's part of a contract are, according to the jurisprudence of France, either *labial* or *real*. The latter correspond to our *tender*, which, when followed by a consignment, amounts to payment. An offer may be made without a tender.

An *offer* by the plaintiff to perform his part of the obligation, is an indispensable preliminary to an action for the rescission of a commutative contract.

BENJAMIN and GRYMES, for the plaintiff. The court has deci-

ded, in the opinion pronounced in this case, that Willcox was not put in default, because the letter, written to him by Sewell, " contained no offer, on the part of Sewell, to perform his part of the contract, which was, to pay the *purchase money then due*." The court goes on to say, that " in commutative contracts, when the reciprocal obligations are to be. performed at the same time, or the one immediately after the other, the party who wishes to put the other in default, must offer, or perform; as the contract requires, that which, on his part; was to be performed; or the opposite party will not be legally put in default." That this, with the principles subsequently laid down by the court on the same subject, are perfectly sound, is readily conceded. But it is believed, that a misapplication has been made of this law to the facts of this case, which are peculiar, and some of which had evidently escaped the attention of. the court, on this part of the subject.

We take it for granted, because both the contract and the opinion of the court sustain us in this position, that Sewell was not bound to pay at all until *after* Willcox had raised his mortgages and produced a clear certificate. The language of the decision is, " a clear certificate must be produced *before* Sewell is bound to pay—to require him first to pay, in order that the money might be used to satisfy the mortgages, would be to make for him a contract different from that he assented to." This is true, but it is not *all.* It will be seen, by looking at the act, and at the notes, that Sewell was *not bound to pay even then.* It is expressly stipulated, that after Willcox had done this, *i. e.* raised the mortgages, he must make a demand on Sewell, *who is to be allowed thirty days after the demand, in order to raise the money.* The notes read thus : " Thirty days after *demand,*" &c. When the plaintiff required Willcox to raise the mortgage, he was not bound to *offer* to pay, or to do any thing else. By law, and by the article of the code quoted by the court, the party who wishes to put the other in default, must offer, or perform, that which, on his part, was to be performed ; but Sewell had nothing to perform, upon Willcox's raising the mortgage. Sewell's obligation to pay, could not arise under the act, till thirty days after the demand. This demand Willcox was prohibited from making, till he produced a clear certificate. Surely, then, there can be no possible

ground for holding Sewell to the obligation of tendering Willcox a payment, in order to put the latter in default; for such tender could be necessary only in the event of its being Sewell's duty to pay, on the cancelling of the mortgage. But as we have already shown, Willcox might have cancelled his mortgages, and remained quiescent for years, without Sewell's being at all bound to pay; inasmuch as the latter's liability, by the very words of the act, and of the notes which he gave, was to arise, only *after a demand of thirty days* subsequently to a release of the mortgage. The decision of the court imposes on Sewell the duty of offering payment *before it was due;* and the court clearly mistakes the fact, when it says, that Sewell's letter contained no offer to pay the *purchase money* then due, for none was then due.

*McHenry* and *A. Hennen*, contra, relied on article 1907 of the Civil Code, to show that the defendant had not been put *in mora*, as required by law.

BULLARD, J. A re-hearing was allowed in this case, upon the question, whether there was such a putting of the defendant in default, previously to the institution of this suit, as the law requires, as an indispensable pre-requisite to the recovery of damages, or to the rescission of contracts. The putting in default, consisted in the counsel of the plaintiff writing a letter to the defendant, Willcox, demanding of him the raising and cancelling of the mortgages existing on the property sold by him to Sewell, and informing him, that suit would be instituted against him for the annulling of the contract of sale, in the event of his refusal or neglect to cancel said mortgages. On the former argument, this appeared to us insufficient, because it was not accompanied by an offer, on the part of the plaintiff, to perform the obligations which he had assumed by the same commutative contract.

It is clear, it was not necessary to make a tender of that part of the price, which was to become due after thirty days demand. No one is obliged to make a tender of money, which the person to whom the tender is made, has no right to require or receive; and until the mortgages were cancelled, Sewell was not bound to pay. He had a right to deposit in the Improvement Bank, and stop the interest. But an *offer* may be made without a *tender*. In the French jurisprudence, from which we suppose this doctrine is

copied, offers are either *labiales* or *réelles*. The latter corresponds to our tender, which, when followed by consignment, amounts to a payment. Merlin Repert. *verbo* Offre. But it may be said, if this be merely a *lip offer*—a simple declaration of willingness on the part of the person making it, to comply with his part of the obligations created by the contract—it is doing a very vain thing—a thing which can be followed by no results. There is but one effect which we can imagine might result from such an offer, which is, to preclude the person making it, from afterwards setting up any new ground, or excuse, for not complying with his engagement. Whatever may have been the policy of the law, or the motive of the Legislature—and we have, on more than one occasion, expressed our regret that such subtleties should have found their way into the code—the question with us is, are we authorized to disregard that provision of the code, which requires, on the part of the plaintiff, an offer to perform his obligation, as a preliminary to an action of rescission of a commutative contract. We think we cannot dispense with it.

It is therefore ordered, that the first judgment rendered remain unchanged.